RONALD and JUDITH KLETTER, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kletter v. Commissioner
Docket No. 1271-78.
United States Tax Court
T.C. Memo 1979-274; 1979 Tax Ct. Memo LEXIS 256; 38 T.C.M. (CCH) 1073; T.C.M. (RIA) 79274; July 23, 1979, Filed Ronald Kletter, pro se. George Mac Vogelei, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined a deficiency in income tax for the petitioners for the taxable year 1975 in the amount of $2,898.52. Due to concessions by the petitioners, the sole question before the Court is whether the amount paid to petitioner, Ronald Kletter, by Contra Costa County as program director of the Methadone Treatment Program is excludible from gross income under section 117. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners Ronald and Judith Kletter are husband and wife, whose legal residence at the time of the filing of the petition *257 herein was San Francisco, California. They filed a timely joint income tax return for the taxable year 1975 with the Internal Revenue Service Center, Fresno, California. Ronald Kletter (hereinafter referred to as petitioner) received a master's degree in 1968 from the New School for Social Research, New York. He was employed by Contra Costa County from 1973 to 1977. From July 2, 1973, to July 1, 1974, petitioner worked as a drug rehabilitation counselor. From July 1, 1974, to May 31, 1977, he was Program Director of the Methadone Treatment Program. As such, petitioner was in charge of three clinics, one of which was located at the Contra Costa County Hospital. In 1974 petitioner enrolled at the California School of Professional Psychology, San Francisco Campus, in a program leading to a doctorate in psychology. As part of the program, petitioner was required to do field participation work of 20 hours per week during the year 1975. At the same time, petitioner continued to serve as Program Director of the Methadone Treatment Program and received a full salary, together with periodic increases during that period. In other words, by working extra hours, and efficiently *258 doing his job as program director, petitioner was able to maintain his regular employment notwithstanding the fact that he was required to devote 20 hours per week to the field work leading to a doctorate degree. For the taxable year 1975, petitioner received salary from Contra Costa County in the amount of $18,584.00. He seeks to exclude therefrom the sum of $9,292.00 under section 117 on the theory that a portion of his wages was paid to him for the time during which he participated in the doctorate program as a candidate for a degree and that such payment therefore is excludible as a scholarship under section 117. OPINION During the taxable year 1975, petitioner had a full-time position as Program Director of the Methadone Treatment Program in Contra Costa County. At the same time, he had been permitted to enroll in a program leading to a doctorate in psychology which would require 20 hours per week of field experience. In other words, the county was willing to permit the petitioner to coordinate his hours as program director to the extent necessary in order to participate in the doctorial program. In this respect, the facts in this case differ from most in that the *259 petitioner received no payment for participation in the doctorial program, but his employer merely permitted him to devote 20 hours a week of fieldwork to that program without any reduction in pay. Petitioner was paid nothing for 20 hours of fieldwork, notwithstanding this entailed the treatment of patients at Contra Costa County Hospital. This case is not dissimilar to . See also . In the Woddail case, the taxpayer, a licensed medical doctor, was employed as a full-time physician at a Veterans Administration hospital. As part of his employment, it was understood that he would receive instruction in neurology and psychiatry at a nearby private hospital, the cost of which would be paid by the Veterans Administration. Petitioner sought to exclude $300.00 per month of the salary he received from the Veterans Administration Hospital for the period during which he participated in the instructional program. In affirming this Court, the appeals court said: We think there is ample support in the record for the Tax Court's determination. The *260 contract itself provides that Woddail was to be employed by the VA as a "full-time physician" and "While in the employ of the Veterans Administration as aforesaid I shall be paid the regular salary of a full-time physician in the grade at which I am assigned." He was employed under the civil service classification of "physician", deductions for income tax were made from his monthly "salary" or "stipend" and he accumulated annual and sick leave. Woddail's instruction and training were under the complete control of the VA, which made the payments to him, and he performed regular daily services at the Hospital for the VA. It is difficult to imagine a more perfect example of an employer-employee relationship. * * *
[3] Lastly, petitioners assert that if the entire amount is not a "fellowship grant" then the portion of such amount paid to Woddail in proportion to the time spent receiving instruction and training as compared with the time spent in supervised clinical work at the Hospital should be excludable under § 117. In other words, they argue that at least a portion of the amount received from the VA constitutes a "fellowship grant" and an allocation should be made for *261 the time spent in receiving instruction and training. The Tax Court completely answered this proposition by stating that "What the petitioner fails to realize is that until the existence of a scholarship or fellowship grant has been established, no allocation is possible. Since we think there is no ground for concluding that a scholarship or fellowship grant was made by the VA to the petitioner, we find that no allocation is justified." Although the petitioner was admittedly a candidate for the degree of Doctor of Psychology, he received no consideration in the form of internship or scholarship or otherwise for his participation in that program. He continued to receive his full salary as an employee of Contra Costa County. He would have received such salary whether or not he enrolled in the doctorate program. No part of petitioner's salary is excludible under section 117. Decision will be entered under Rule 155.